# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

JESSICA MARIE S.,[1]

                              Plaintiff,

      v.                                    5:23-CV-370
                                              (DNH/MJK)

MARTIN J. O'MALLEY,

                              Defendant.

---

JUSTIN GOLDSTEIN, ESQ., for Plaintiff
KATHRYN S. POLLACK, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD:

## REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 5), and this matter was therefore referred to me for Report and Recommendation by Senior United States District Court Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).[2]  Both parties filed

---

[1]   In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation will identify the plaintiff using only her first name and last initial.

[2]   This case was reassigned to U.S. District Judge David N. Hurd on February 21, 2024. (Dkt. No. 19).

1

briefs (Dkt. Nos. 10, 16, 17), which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I. **PROCEDURAL HISTORY**

On January 25, 2017, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning January 25, 2017. (Administrative Transcript ("T.") 15, 157-63). Plaintiff's application was denied on April 21, 2017 (T. 15, 77-80). On June 24, 2019, Administrative Law Judge ("ALJ") Laureen Penn conducted a hearing during which plaintiff and vocational expert Marvin Bryant testified. (T. 32-64). On July 25, 2019, the ALJ issued a decision denying plaintiff's claim. (T. 15-26). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 17, 2020. (T. 1-5).

Thereafter, plaintiff commenced an action in this court by filing a complaint challenging the Commissioner's final decision. (T. 3116-17). On July 16, 2021, United States Magistrate Judge Christian F. Hummel "So Ordered" the Parties Stipulation for Remand ("Stipulation") pursuant to which the parties agreed that upon remand, plaintiff would be offered a "full de novo" hearing before an administrative law judge. (T. 3118-20). On April 21, 2022, the Appeals Council remanded this case for further proceedings. (T. 3124-26).

Consistent with the Stipulation, the ALJ conducted a second hearing on September 29, 2022 during which plaintiff and vocational expert Cherice McAfee Powell ("VE Powell") testified. (T. 3054-84). On December 14, 2022, the ALJ issued a decision denying plaintiff's claim. (T. 3022-42).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a plaintiff seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013*); see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian,* 708 F.3d at 418. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden shifts to the Commissioner to prove the final step. *Id.*

Where, as here, a claimant is found to be disabled, and substance abuse (drug addiction or alcoholism) is deemed to be a contributing factor material to the determination, the regulations require the ALJ to go beyond the five step sequential analysis and consider whether the claimant would still be disabled in the absence of the addiction. *See* 20 C.F.R. §§ 404.1535(a); 416.935(a). In making that determination, the ALJ is required to evaluate which of the claimant's physical and mental limitations upon which the disability determination was made would remain if the claimant stopped using drugs or alcohol and then determine whether any or all the remaining limitations would be disabling. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ concludes that the claimant's remaining limitations would not be disabling, a finding will be made that the drug addiction or alcoholism was a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). Conversely, if the ALJ concludes that the claimant's remaining limitations are disabling, a finding will be made that the claimant was disabled independent of the drug

addiction or alcoholism and that the same was not a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court "is limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera,* 697 F.3d at 151. It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also Selian,* 708 F.3d at 417 ("the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation

5

of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence

in the record. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are

unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical

testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that

supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004);

*see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6,

2010).

## III.   FACTS

Plaintiff was approximately 36 years old on the alleged disability onset date in

2017. (T. 3060). She earned a GED. (T. 3061). At the time of her second administrative

hearing in 2022, plaintiff lived in a single-family home with her boyfriend. (T. 3060-

61). Plaintiff had a driver's license but did not drive. (T. 3061).

Plaintiff testified that she is unable to work because she suffers from social

anxiety and has a "hard time being and dealing with people." (T. 3062).  Plaintiff also

claimed having difficulty handling criticism. (*Id.*). Plaintiff testified that she left her

house maybe once or twice a week if she had an appointment that her boyfriend drove

her to. (*Id.*). On the other days, plaintiff testified that she was unable to leave the house.

(T. 3063).

Plaintiff testified that she sleeps approximately three to four hours per night. (*Id.*). Plaintiff also testified that she experienced panic attacks that lasted for approximately thirty minutes. (T. 3064).

Plaintiff testified that it is difficult for her to be around people because she cannot accept criticism. (T. 3065). When criticized, plaintiff testified that she will "run away every time" and feels like she is going to have "an attack or an episode or something." (*Id.*). Plaintiff is also unable to accept criticism from supervisors. (*Id.*). When one of plaintiff's former managers criticized her job performance, she "just left" and "quit" her job. (T. 3066). Plaintiff left another job because she did not get along well with people. (*Id.*).

Plaintiff testified that she experienced nightmares "maybe two times a week or sometimes . . . two times a month." (T. 3067). Further, plaintiff testified that she could not concentrate, could never finish a book, and was unable to finish anything that she started. (*Id.*).

Plaintiff testified that she was treating at Liberty Resources with NP Craner for "about a year" for her mental health condition. (T. 3067-68).[3] Plaintiff had treated at Liberty Resources for a total of five years, working on grounding, anxiety, and attending her appointments. (*Id.*). Plaintiff testified that her anxiety made it difficult to attend appointments. (*Id.*).

Plaintiff took Lexapro, Clonidine, Hydroxyzine and Trazadone and believed that the medications made her "more confused." (*Id.*). Despite the medications, plaintiff testified that she still experienced the same symptoms. (*Id.*).

---

[3] NP Craner was incorrectly referred to as "Dr. Craner" at the administrative hearing.

Plaintiff had a history of substance abuse. (*Id.*). Plaintiff testified that she used marijuana for her anxiety but was otherwise presently sober. (T. 3070). NP Craner was aware of plaintiff's marijuana use and wanted her to find a doctor who would prescribe it. (*Id.*).

In terms of daily living, plaintiff testified that her boyfriend did the grocery shopping because she "cannot be in line with people" and "can't interact." (T. 3071). Plaintiff was also "very short" with people. (T. 3072). Plaintiff dressed and bathed herself. (*Id.*). Plaintiff testified that her boyfriend did the cooking and generally took care of her. (*Id.*). Plaintiff did some cleaning and watched television but could not sit through a movie. (T. 3073).

On a typical day, plaintiff testified that her daughter would visit "if [she's] feeling up to it," and plaintiff would also sit on her porch, weather permitting. (*Id.*). On bad days, which occurred three to four time each week, plaintiff testified that it felt "like doomsday, like something bad is going to happen." (T. 3073-74.). Plaintiff further testified that on bad days, she would not interact with anyone and was unable to work. (T. 3074).

In response to the ALJ's hypothetical, VE Powell testified that plaintiff could work as a counter supply worker, floor waxer, marker, router, and document preparer. (T. 3079). VE Powell further testified that plaintiff could perform these jobs even if plaintiff missed one day of work each month, but that no work would be available if plaintiff missed two days per month on a regular basis. (T. 3080). VE Powell also testified that in addition to three regularly scheduled breaks, an employer would tolerate an employee being off-task no more than ten percent of the workday. (*Id.*). Anything greater than ten percent would be work prohibitive. (*Id.*).

When questioned by plaintiff's counsel, VE Powell testified that the tolerance for absenteeism would be more restrictive during a probationary period. (T. 3081). VE Powell also stated that work would be precluded if an individual, up to two-thirds of the workday, could not accept instruction or respond appropriately to criticism from a supervisor. (T. 3082).

## IV.    THE ALJ'S DECISION

The ALJ determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since January 25, 2017, the alleged onset date. (T. 3025). Next, the ALJ found that plaintiff had the following severe impairments: a depressive disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, opiate use disorder, alcohol use disorder, cocaine use disorder, bipolar disorder, and anxiety. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 3026).

Next, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can understand, remember, and carry out simple instructions and can use judgment to make simple work-related decisions; can occasionally interact with supervisors and co-workers but cannot interact with the public or engage in teamwork or provide direct customer service. She can sustain concentration and persistence for periods of 2 hours at a time. She can deal with occasional changes in a routine work setting. She cannot perform work involving production rate pace or assembly line type work. She will miss 2 days of work per month.

(T. 3027-28).

9

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 3028). The ALJ further noted that she fully considered opinion evidence pursuant to 20 C.F.R. § 416.927. (*Id.*). After considering the evidence of record, the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that claimant's statements concerning the intensity, persistence, and limiting effect of these symptoms are generally consistent with the evidence when the substance use is included." (T. 3028).

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. *See* 20 C.F.R. § 416.965. (T. 3033). Finally, at step five, considering the plaintiff's age, education, and RFC based on all impairments, including the substance use disorder, the ALJ relied on the testimony of VE Powell in determining that plaintiff could not make a successful adjustment to work that existed in significant numbers in the national economy that she could perform. (T. 3034). Accordingly, the ALJ concluded that plaintiff was disabled. (*Id.*).

Having concluded the five step sequential evaluation, the ALJ then undertook the analysis required by 20 C.F.R. § 416.935. First, the ALJ found that in the absence of substance use, the remaining limitations would cause more than a minimal impact on plaintiff's ability to perform basic work activities. (T. 3034). Plaintiff would therefore still have a severe impairment or combination of impairments. (*Id.*). Next, the ALJ opined that in the absence of substance use, plaintiff would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part

404, Subpart P, Appendix 1. (*Id.*). The ALJ then found that plaintiff had the

residual functional capacity to

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant can understand, remember and carry
> out simple instructions and can use judgment to make simple work-related
> decisions; can occasionally interact with supervisors and co-workers and can
> have incidental interaction with the public, but cannot provide direct
> customer service. She can sustain concentration and persistence for periods
> of 2 hours at a time. She can deal with occasional workplace changes in a
> routine work setting. She cannot perform assembly line type work.

(T. 3036).

At step four, the ALJ found that plaintiff was still unable to perform her past

relevant work. At step five, and in the absence of substance abuse, the ALJ considered

the plaintiff's age, education, work experience, RFC, and testimony of VE Powell to

conclude that plaintiff would be capable of making a successful adjustment to work that

exists in significant numbers in the national economy that she could perform. (T. 3041).

Accordingly, the ALJ determined that plaintiff was not disabled because her substance

abuse was a contributing factor to the initial determination of disability. (*Id.*).

## V.    **ISSUES IN CONTENTION**

Plaintiff argues that remand is warranted because the ALJ's determination that

she was not under a disability is not supported by substantial evidence and was based on

errors of law. Specifically, plaintiff contends that the ALJ erred by failing to properly

evaluate multiple medical opinions, particularly those from plaintiff's "non-acceptable"

source providers. (Plaintiff's Brief (Pl. Br.) pgs. 18-24) (Dkt. No. 10). Defendant

contends that the Commissioner's determination should be affirmed because the ALJ

appropriately reconciled conflicts in the medical evidence in determining that plaintiff

could perform a range of simple work in the absence of her substance abuse impairments. (Defendant's Brief (Def. Br.) pgs. 9-18) (Dkt. No. 16).

For the reasons stated below, the court finds that substantial evidence does not support the ALJ's assessment of the medical opinion evidence of record and subsequent materiality determination that, if the claimant stopped substance use, she would be capable of making a successful adjustment to work that exists in the national economy. Accordingly, remand is warranted so that the ALJ may properly assess the medical evidence of record, and develop the record as necessary, in order to reach a disability determination that is supported by substantial evidence.

## VI.    RFC/EVALUATION OF MEDICAL EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens,* 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v. Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F.2d at 587). "[A]n RFC finding is administrative in nature, not medical,

and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527 (d)(2)).

Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

### 2.    Evaluation of Medical Opinion Evidence

For claims filed before March 27, 2017, the ALJ must analyze medical opinions according to the treating physician rule, which details how to accord weight to the opinions of different medical sources. 20 C.F.R. §§ 404.1527(c), 416.927(c). According to the rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of [the regulations] is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32).

In addition to considering opinions from treating physicians and other "acceptable medical sources," the ALJ may also consider evidence from providers who are not "acceptable sources." *See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). "Acceptable medical sources" under the former regulations, which are applicable here, include licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *Id.* Medical sources who are not "acceptable medical sources" include, among others, nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. *Id.* SSR 06-03p states that information from "'other sources' cannot establish the existence of a medically determinable impairment," but "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

15

ALJs are not required to afford the same level of deference to the opinions of "other sources," including nurse practitioners, as they are to the opinions of "acceptable medical sources" like physicians and psychologists. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1513(d), 416.913(a), SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "[W]hile the ALJ is certainly free to consider the opinions of . . . 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x. 105, 108 (2d Cir. 2008). Nonetheless, 'other source' opinions are important, and ALJs are required to evaluate them in some depth. *See* SSR 06-03p*, 2006 WL 2329939, at *3 ("Opinions from these [other] sources, who are not technically deemed 'acceptable medical sources' under our rules, . . . should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."); *see also Mongeur,* 722 F.2d at 1039 n.2 (2d Cir. 1983) (stating opinion of nurse practitioner who treated claimant on regular basis entitled to "some extra consideration," but not the same as a treating physician); *Hernandez v. Astrue*, 814 F.Supp.2d 168, 183 (S.D.N.Y. 2011) ("[I]t is possible for the opinion of a non-acceptable medical source with a particularly lengthy treating relationship with the claimant to be entitled to greater weight than an 'acceptable medical source' such as a treating physician who has rarely had contact with the claimant").

In evaluating opinions of "other sources," the ALJ should use the same factors as are used to evaluate the opinions of "acceptable medical sources." SSR 06-03p, 2006

16

WL 2329939, at *4. These factors include the length of the treatment relationship, the frequency of evaluation, the degree to which the medical source provided evidentiary support for his or her opinions, the opinions' consistency with the record as a whole, and any other relevant factors. *Id.; see also* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Evans v. Colvin*, 649 F. App'x 35, 38-39 (2d Cir. 2016). In doing so, the ALJ should explain the weight given to these opinions or ensure the discussion "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" *Robinson v. Berryhill*, No. 1:17-CV-00362, 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018) (quoting SSR 06-03p, 2006 WL 2329939, *6) ("Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

### B.    Medical Evidence

#### 1.    Kristen Milburn, PMHNP

On June 14, 2019, Kristen Milburn, PMHNP ("NP Milburn"), plaintiff's prescribing nurse practitioner, completed a Treating Medical Source Statement (Mental). (T. 3013-18). NP Milburn noted that she had treated plaintiff monthly since January 17, 2018. (T. 3013). NP Milburn's clinical findings included moderate levels of anxiety and difficulty with focusing and concentrating. (*Id.*).

17

NP Milburn opined that plaintiff's psychologically based symptoms precluded her from completing a normal workday and workweek without interruption, responding appropriately to changes in a routine work setting, and dealing with normal work stress 11% to 20% of an eight-hour workday. (T. 3016). NP Milburn further stated that plaintiff's symptoms precluded her from working in coordination with or in proximity to others without being unduly distracted, interacting appropriately with the general public, accepting instructions, responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them, or exhibiting behavioral extremes more than 20% of an eight-hour workday. (T. 3015-16). NP Milburn also opined that plaintiff's symptoms would preclude her from maintaining regular attendance and being punctual within customary, usually strict tolerances for less than 10% of an eight-hour workday. (T. 3015). According to NP Milburn, plaintiff's limitations were a result of her struggles to advocate for herself in a group setting, inability to be in close proximity to others, and difficulty with memory recall, focus and concentration. (T. 3016). Notably, NP Milburn opined that plaintiff's severe conditions would cause her to be off-task 20% of a normal workday and/or workweek, if she worked full-time. (T. 3016). In addition to being off-task, NP Milburn stated that plaintiff would be absent from work "about four days per month" which would "depend on job particularity in relation to interaction [with] public and coworkers." (T. 3017).

NP Milburn opined that plaintiff had a mild impairment for understanding, remembering, or applying information; an extreme impairment in the area of interacting with others; a marked impairment in the area of concentrating, persisting or maintaining pace; and a moderate impairment in the domain of adapting or managing oneself. (T. 3018).

The ALJ determined that NP Milburn's "severely restricting opinions . . . merited less weight" because plaintiff's treating records "showed that [plaintiff] had interests such as taking walks and spending time with family and that she had fairly normal mental health findings on repeated examinations . . . ." (T. 3032).

### 2.    Ashley Kessler, CASAC

On June 1, 2018, Ashley Kessler, a credentialed alcoholism and substance abuse counselor (" CASAC"), completed a Substance Use Disorder Vocational Rehabilitation Readiness Assessment. (T. 2986-90). CASAC Kessler noted that plaintiff's longest period of sobriety was for eighteen months when she was in drug court in 2021. (T. 2986).

On May 22, 2019, CASAC Kessler completed a Treating Medical Source Statement (Mental) (T. 2997-3002), noting that she saw plaintiff daily, Monday through Friday for methadone dosing and weekly for co-occurring individual sessions. (T. 2997). CASAC Kessler also stated that plaintiff was unable to engage in full-time competitive employment on a sustained basis because of the severe anxiety plaintiff previously exhibited while working full-time. (*Id.*). Plaintiff also reported "becoming too [easily] overwhelmed, and as a result [left] work early." (*Id.*).

CASAC Kessler further opined that as a result of plaintiff's symptoms, her ability to remember simple work-like procedures, understand and remember very short and simple instructions, carry out short and simple instructions, maintain attention for two hour segments, maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, and perform at a consistent pace without an unreasonable number and length of rest periods was precluded for more than 20% of an eight-hour

19

day. (T. 2999). She further concluded that plaintiff's ability to maintain regular attendance and be punctual within customary, usually strict tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms was precluded for 11% to 20% of an eight-hour workday, and that her ability to work in coordination with or in proximity to others without being unduly distracted was precluded for less than 10% of an eight-hour workday. (*Id.*).

CASAC Kessler also stated that plaintiff's ability to respond appropriately to changes in a routine work setting, travel to unfamiliar places or use public transportation, be aware of normal hazards and take appropriate precautions, set realistic goals, or make plans independently of others was precluded for more than 20% of an eight-hour workday. Plaintiff's ability to ask simple questions or request assistance, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress was precluded 11% to 20% of an eight-hour workday because of her symptoms. (T. 3000).

CASAC Kessler noted that because of plaintiff's anxiety and easily feeling overwhelmed, plaintiff would be off-task more than 30% of the time if she worked on a full-time basis and that plaintiff would be absent from work more than four days per month. (T. 3000-01). CASAC Kessler stated that plaintiff's ability to understand, remember or apply information was mildly impaired; her ability to interact with others was extremely impaired; her ability to concentrate, persist, or maintain pace was extremely impaired; and her ability to adapt or manage oneself was moderately

20

impaired. (T. 3002). Finally, CASAC Kessler opined that alcohol and substance abuse did not contribute to plaintiff's impairments. (T. 3001).

The ALJ determined that CASAC Kessler's opinion merited less weight because the record showed that plaintiff cared for her grandfather, functioned well with medications, spent time with her daughter and grandchild, and attended group therapy. (T. 3032).

### 3.    Katie Durant, LMHC/Kristen Milburn, PMHNP

On May 20, 2019, Licensed Mental Health Counselor Katie Durant ("LMHC Durant") and NP Milburn jointly completed a Treating Medical Source Statement (Mental). (T. 3005-3010). They noted that plaintiff had been a patient since November 21, 2017 with biweekly appointments. LMHC Durant and NP Milburn opined that plaintiff suffered from moderate to severe anxiety on a daily basis, racing thoughts, physical pain due to panic attacks, restlessness, and difficulty concentrating. (T. 3005). They further noted that plaintiff was unbale to engage in full-time employment on a sustained basis. (*Id.*).

NP Milburn and LMHC Durant opined that plaintiff's psychologically based symptoms precluded her from completing a normal workday and workweek without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods. (T. 3007). They further opined that due to plaintiff's symptoms, her ability to maintain attention for two-hour segments and work in coordination with or in proximity to others without being unduly distracted was precluded for more than 20% of an eight-hour workday. (*Id.*). Also, NP Milburn and LMHC Durant opined that plaintiff's ability to remember simple work-like procedures, maintain regular

attendance and be punctual within customary, usually strict tolerances, was precluded 11% to 20% of an eight-hour workday. (*Id.*).

NP Milburn and LMHC Durant opined that plaintiff's symptoms completely precluded her from traveling to unfamiliar places or using public transportation. (T. 3008). Plaintiff's symptoms also precluded her from responding appropriately to changes in a routine work setting more than 20% of an eight-hour workday. (*Id.*). They further opined that plaintiff's symptoms precluded her from asking simple questions or requesting assistance, interacting appropriately with the general public, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress 11% to 20% if an eight-hour workday. (*Id.*). NP Milburn and LMHC Durant also noted that plaintiff often experienced extreme symptoms of anxiety, difficulty with being in proximity to others, difficulty with memory recall, difficulty focusing and concentrating for short periods of time, difficulty with consistent attendance, and completing unfamiliar tasks due to anxiety and depression. (*Id.*). They concluded that plaintiff would be off-task more than 30% of a workday due to her symptoms, and that she would be absent from work about four days per month depending on the frequency of her contact with the public. (T. 3007-08).

NP Milburn and LMHC Durant opined that plaintiff has a marked limitation for understanding, remembering or applying information; a marked limitation for interacting with others; a marked limitation for concentrating, persisting and maintaining pace; and a moderate limitation for adapting or managing oneself. (T. 3010). Finally, they opined that plaintiff's substance abuse did not contribute to her limitations. (T. 3009).

The ALJ found that the opinion of NP Milburn and LMHC Durant merited less weight because the treating records showed that plaintiff had interests in taking walks, spending time with family, and that plaintiff had fairly normal mental health findings in repeated examinations. (T. 3032).

### 4.    Katie Durant, LMHC/Kristin Platt, LCSW-R

On July 2, 2018, LMHC Durant and Licensed Clinical Social Worker Kristin Platt ("LCSW Platt") completed a mental health employment assessment for Onondaga County Department of Social Services. (T. 2953-54). LMHC Durant and LCSW Platt had been treating plaintiff since November 21, 2017. Plaintiff's diagnoses included depression, generalized anxiety disorder, opioid disorder and stimulant use disorder. (*Id.*). They further opined that plaintiff was moderately limited in her ability to follow, understand and remember simple instructions, to interact with others and maintain socially appropriate behavior without exhibiting behavior extremes, and maintaining attention and concentration for rote tasks. (*Id.*). LMHC Durant and ALCSW Platt further opined that plaintiff could work up to twenty hours per week, and that plaintiff required a good professional support system. (T. 2954).

The ALJ did not ascribe any weight or relevance to the opinion of LMHC Durant and LCSW Platt.

### 5.    Thomas G. Reap, Ph.D./Patricia Faith, MS, CVE, CRC

On January 26, 2019, Dr. Reap and Certified Vocational Evaluation Specialist/Certified Rehabilitation Counselor Patricia Faith completed a vocational rehabilitation examination to help determine occupations that were realistic considering plaintiff's "disabling conditions." (T. 2946-51).

Dr. Reap and Ms. Faith opined that when symptomatic, plaintiff may have impaired judgment, difficulty showing initiative or motivation, concentrating, retaining information, effectively handling stress or criticism, making good decisions, or being reliable. (T. 2946). They noted that the side effects of taking Topamax could result in confusion and difficulty concentrating. (T. 2947).

Dr. Reap and Ms. Faith further opined that plaintiff's potential vocational barriers included, among other things, low self-esteem. (T. 2949). During her assessment, plaintiff voiced concern and nervousness when she learned that she had been given a job assignment working with men. (*Id*.). Also, Dr. Reap and Ms. Faith noted that plaintiff would benefit from continued counseling and therapy, making part-time work more beneficial than full-time employment. *Id*. They further noted that plaintiff "may do better in a slow and relaxed setting." *Id*. Finally, Dr. Reap and Ms. Faith opined that plaintiff should reenter the work force by "starting slow with a job that has fairly concrete job duties and in an environment in which she feels comfortable; i.e. sparsely populated and slow paced." (T. 2951).

The ALJ afforded Ms. Faith's opinion some weight, noting that the opinion was made shortly after a relapse and that subsequent improvements were noted such that plaintiff's frequency of therapy appointments changed. (T. 3032).

24

### 6.    Hayley Craner, PMHNP

Plaintiff's treating nurse practitioner, NP Craner ("NP Craner"), provided an opinion after remand on September 6, 2022. (T. 3701-14). Plaintiff had been under NP Craner's care for one year at the time for generalized anxiety disorder. (T. 3701). Symptoms included anxiety with panic attacks. (*Id.*). Medications included Lexapro, Trazodone, and Clonidine. (*Id.*). Side effects from those medications included dizziness, drowsiness, and daytime sleepiness. (*Id.*). Signs and symptoms included decreased energy, generalized persistent anxiety, mood disturbance, concentration difficulty, intrusive recollections, apprehensive expectations, emotional withdrawal or isolation, hyperactivity, easy distractibility, short term memory impairment, sleep disturbance, and recurrent severe panic attacks. (T. 3703).

NP Craner opined that for more than 20% of an eight-hour workday, plaintiff would be precluded from sustaining an ordinary routine without special supervision, working in coordination or proximity to others without being unduly distracted, completing a normal workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of rest periods, traveling to unfamiliar places, or dealing with normal work stress. (T. 3705, 3707). NP Craner further opined that plaintiff's symptoms precluded her from appropriately interacting with the general public. (T. 3707). Most other abilities and attitudes for work were described by NP Craner as precluded between 11% to 20% of

25

the time. (T. 3705, 3707). She further noted that plaintiff would be off-task more than 30% percent of the time, and absent from work about three workdays per month. (T. 3707, 3709).

The ALJ failed to ascribe any weight or degree of persuasiveness to NP Craner's opinion but noted that it was inconsistent with the provider's own care records. (T. 3032).

### 7.    Dr. Richard Weiskopf

Consultative Examiner Dr. Richard Weiskopf examined plaintiff on April 7, 2017. (T. 1172-1176). Plaintiff reported that she saw her psychiatrist every six weeks and a therapist every two weeks. (T. 1172). Plaintiff also stated that she experienced chronic anxiety since age 11 and had a history of childhood abuse. (*Id.*).  Plaintiff further reported that she had PTSD flashbacks, and that her mental condition precluded her from holding a job. (*Id.*). Plaintiff noted that she experienced panic attacks which caused an increased heart rate and shortness of breath. (T. 1172). Plaintiff further reported that she had attention deficit disorder and has attempted suicide in the past. (T. 1773).

According to plaintiff, her boyfriend did the cooking and shopping because she "[doesn't] like to be around people." (*Id.*). Plaintiff also watched television, listened to the radio and read. (*Id.*).

Plaintiff's physical examination was unremarkable, and Dr. Weiskopf reported that plaintiff had no physical limitations. (T. 1174). However, Dr. Weiskopf reported

26

that plaintiff's "chronic and severe mental conditions preluded her holding a job in the workplace." (T. 1175).

The ALJ found that Dr. Weiskopf's opinion merited less weight because the examination was not for mental health reasons. The ALJ also noted that Dr. Weiskopf did not have any mental health qualifications, his opinion was based on a single examination without greater record review, and plaintiff's health records showed improvements. (T. 3032).

### 8. Dennis M. Noia, Ph.D.

Consultative examiner Dr. Noia conducted a psychiatric examination of plaintiff on April 7, 2017. (T. 1167-1171). Plaintiff reported that she had a history of psychiatric hospitalizations, including in 2013 for suicidal ideation, and three times as a teenager. (T. 1167). Plaintiff further reported symptoms of depression and anxiety, including dysphoric moods, crying spells, feelings of guilt, loss of usual interests, increased irritability, fatigue and loss of energy, low self-esteem, problems with memory, problems with concentration, flashbacks and nightmares related to physical and sexual abuse by her stepfather, and fear of being around groups of people. (*Id.*).

Dr. Noia reported that plaintiff was cooperative and that her manner of relating, social skills, and overall presentation was adequate. (T. 1169). Dr. Noia further reported that plaintiff's affect was constricted and that she was sad and tearful. (*Id.*). Plaintiff's recent and remote memory skills were mildly impaired, and her intellectual functioning was in the average range.

Plaintiff reported that she can dress, bathe, and groom herself. (T. 1170). Plaintiff further reported that due to her psychiatric problems, there are times when she does not cook, prepare food, or do general cleaning. (*Id.*). Plaintiff also reported that she avoided shopping and did not manage her own money due to overspending and difficulty budgeting. (*Id.*). Plaintiff further reported that she did not drive or use public transportation. (*Id.*). Plaintiff reported difficulty getting along with friends and family, and that she spent her days doing some chores, going to treatment, reading, watching television, and listening to the radio. (*Id.*).

Dr. Noia opined that plaintiff did not have any limitations understanding, remembering, or applying simple directions and instructions, but did have mild limitations understanding, remembering, or applying complex directions and instructions. (*Id.*). He opined that plaintiff had moderate to marked limitations interacting adequately with supervisors, coworkers, and the public. (*Id.*). Dr. Noia further concluded that plaintiff had mild limitations sustaining concentration and performing tasks at a consistent pace, sustaining an ordinary routine, and attendance at work. (*Id.*). He further reported that plaintiff had marked limitations regulating her emotions, controlling behavior, and maintaining her well-being. (*Id.*). Dr. Noia noted that plaintiff's difficulties were caused by psychiatric and substance abuse problems, and that plaintiff's psychiatric problems may significantly interfere with her ability to function on a daily basis. (*Id.*).

28

Dr. Noia diagnosed plaintiff with PTSD accompanied by panic attacks, unspecified anxiety disorder, alcohol use disorder in early remission, cannabis use disorder in early remission, opioid use disorder in early remission, and stimulant use disorder in early remission. (*Id*.). Dr. Noia recommended that plaintiff continue with treatment and that he expected plaintiff's impairments and the timeframe for suggested therapy to last more than two years. (T. 1170-71). Dr. Noia opined that plaintiff's prognosis was guarded. (T. 1171).

The ALJ afforded Dr. Noia's opinion some weight because it was before the sobriety date reported by plaintiff coupled with the fact that the medical evidence of record showed less significant mental health symptoms during periods of sobriety. (T. 3032).

## C.   Analysis

The record does not include an opinion from a "treating physician" that would be entitled to deferential consideration under 20 C.F.R. § 416.927(c). It does, however, include opinions from other acceptable medical sources, including the state agency medical consultant and various consultative examiners. In addition, the ALJ considered a multitude of work-preclusive medical opinions from various "other sources" who treated plaintiff on a regular basis, including nurse practitioners, social workers, and counselors.  (T. 3005-10, 2997-3002, 3013-18, 3701-11). Although these opinions constitute "other source" evidence, the Social Security regulations and rulings generally require the ALJ to "explain the weight given to [such opinions,] or otherwise ensure that

the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–03p, 2006 W L 2329939, at *6, quoted in *Buck v. Colvin*, 2014 W L 338841, at *7 (W.D.N.Y. Jan. 30, 2014); *see also Kohler*, 546 F.3d at 268–69 (although ALJ is not required to give controlling weight to opinion of non-medical source, he should have given the opinion "some consideration"); *Delacruz v. Astrue*, 2011 WL 6425109, at *17 (S.D.N.Y. Dec. 1, 2011) (all courts agree that "other source" opinions "must be accorded some weight").

In her decision, the ALJ afforded "weight" to the other source opinions of record, however her discussion of the limitations posed by these sources was extremely limited, and lacked any meaningful discussion of the relevant regulatory factors. Of greatest concern, however, is the ALJ's mischaracterization of this evidence as it related to plaintiff's functional abilities without substance abuse. "The 'key factor' in determining whether alcoholism or drug addiction is [a] contributing factor material to the determination of disability is whether the claimant would still meet the definition of disabled under the Act if [s]he stopped using alcohol or drugs." *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005); *see also Smith v. Comm'r of Soc. Sec.*, 731 F. App'x 28, 30 (2d Cir. 2018) ("Drug addiction is a material factor if the individual would not be found disabled if she stopped using drugs."); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) ("The critical question is 'whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol.' " (quoting 20 C.F.R. § 416.935(b)(1))). "If the remaining limitations would still be

disabling to the claimant on their own, then the claimant is entitled to . . . benefits. If the remaining limitations would not be disabling on their own, then the alcohol or substance abuse is considered material; and the claimant would not be eligible for benefits." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 181 (E.D.N.Y. 2011) (citations omitted). The claimant has the burden of proving that his substance use disorder is not a contributing factor material to the disability determination. *See Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 273 (W.D.N.Y. 2005) (citations omitted).

Here, in conjunction with her assessment of the opinion evidence of record, the ALJ observed that "none of the opinions available specifically considered [plaintiff's] functioning with or without substance abuse." (T. 3033). This statement is patently belied by the record, which indicates that more than one of plaintiff's treating sources opined as to the extent plaintiff's limitations would exist in the absence of substance abuse – in particular those opinions rendered by NP Milburn, LMHC Durant and Kessler, who specifically indicated that plaintiff's substance abuse did not contribute to plaintiff's limitations. (T. 3001, 3309). Thus, to the extent that the ALJ's decision turned on whether plaintiff's admittedly disabling limitations would still exist in the absence of her substance use disorder, the ALJ's mischaracterization of directly relevant evidence on that issue, and failure to otherwise meaningfully discuss these opinions, was error. *See Anderson v. Colvin*, No. 5:12-CV-1008 (GLS/ESH), 2013 WL 5939665, at *6 (N.D.N.Y. Nov. 5, 2013) (error for ALJ not to consider the "six item-by-item credibility factors in any discernible way").

The ALJ's error in mischaracterizing, and failing to adequately assess, the "other source" evidence of record was compounded by his assessment of the consultative examiners' opinions – which were also work preclusive. In particular, the ALJ only gave Dr. Noia's opinion "some weight," because it was rendered "before the sobriety date the claimant alleges (June 2018) . . . ." (T. 3032). This is not an accurate representation of the timeline concerning plaintiff's sobriety. By the ALJ's own detailed account of plaintiff's dynamic history of sobriety and relapse (T. 3029-31), plaintiff was abstinent from June 2016 until her relapse in June 2017. Indeed, the ALJ even noted that plaintiff's "April 2017 consultative examination by Dr. Noia confirmed she had not used substances since her 2016 rehabilitation . . . ." (T. 3029). Thus, for the ALJ to reject Dr. Noia's opinion for marked limitations in such short shrift, and on a basis that is plainly contradicted by the record, was error. This is especially true considering that Dr. Noia's opinion was supported by the "other source" evidence, as well as the opinion by consultative examiner Dr. Weiskopf, prepared during the same period of sobriety, indicating that plaintiff's "chronic and severe mental conditions" were work preclusive. (T. 1175).

The ALJ effectively rejected the restrictive opinions of plaintiff's treating providers and the consultative examiners. The ALJ further concluded that state agency medical consultant Dr. Juriga's opinion for moderate limitations it was an overestimate of plaintiff's abilities when considering her substance abuse, but a "good basis point" for the RFC if plaintiff "stopped the substance abuse." To be sure, opinions of reviewing psychologists and psychiatrists can constitute substantial evidence supporting

an ALJ's decision. See *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). However, the Second Circuit has cautioned against such reliance when mental limitations are at issue because "a one-time snapshot of a [plaintiff's] status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). Here, the state agency consultant's evaluation did not even discuss the restrictive mental limitations opined by plaintiff's consultative examiners, nor did Dr. Juriga have the benefit of considering the multitude of work-preclusive treating provider opinions which were rendered subsequent to the state agency review.

The court is mindful of Second Circuit precedent rejecting the argument that a materiality determination must be based on expert psychiatric opinion evidence, and finding that an ALJ's discussion of the limited treatment notes of record prepared during instances where a plaintiff "did not have access to drugs or alcohol" constituted substantial evidence to support the ALJ's determination that plaintiff would not be disabled without substance abuse. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012);[4] *see also* Social Security Ruling 13-2p, 2013 WL 621536, n. 19 (S.S.A.)

---

[4] *See also Smith v. Comm'r of Soc. Sec. Admin.*, 731 Fed. Appx. 28, 30 (2d Cir. 2018) (plaintiff failed to demonstrate that substance abuse was not a material factor where "medical records showed that her depression, anxiety, and bipolar disorder symptoms were well-managed through medications and that her functioning improved when she underwent substance abuse treatment"); *Kelly v. Comm'r*, No. 19-CV-1363, 2020 WL 6945926, at *5 (E.D.N.Y. Nov. 25, 2020) (affirming ALJ's decision where, *inter alia*, the ALJ considered plaintiff's own statements regarding the effect of substance use on his symptoms and functioning, and compared plaintiff's symptoms and functioning during this period of substance abuse to his symptoms and functioning while sober); *Johnson v. Berryhill*, No. 17-cv-6436, 2018 WL 4275985, at *13 (W.D.N.Y. Sept. 7, 2018) (affirming ALJ's decision where ALJ considered psychologist and

("The finding about materiality is an opinion on an issue reserved to the Commissioner under 20 CFR 404.1527(e) and 416.927(e). Therefore, we will not ask a treating source, a CE provider, a medical expert, or any other source for an opinion about whether [substance abuse] is material."). It is well settled that a finding of materiality can be made based on medical evidence during periods of sobriety demonstrating that the claimant would not otherwise be disabled absent the substance abuse. *Bradley F. v. Comm'r of Soc. Sec.*, No. 21-CV-0529, 2023 WL 6163432, at *8 (W.D.N.Y. Sept. 21, 2023) (listing cases).  However, these cases do not suggest that the ALJ's discretion in rendering materiality determinations otherwise supplants her duty to properly assess the medical opinion evidence pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c), nor does it permit the ALJ to unfoundedly reject opinion evidence of record that is directly relevant to the issue of materiality.

"Once the ALJ has reached a determination regarding materiality, as with all substantive findings in the ALJ's decision, the Court need only ensure that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Liberti v. Comm'r of Soc. Sec.*, No. 6:18-CV-6384, 2019 WL 13219673, at *6 (W.D.N.Y. Oct. 29, 2019) (quoting *Biestek v. Berryhill*, 587 U.S. ____, 139 S.Ct. at 1154, 1157 (2019)). That standard was not met here. The ALJ's materiality finding was

---

mental health counselors' treatment notes documenting mental health improvement during periods of abstinence and finding the "record was sufficient to permit the ALJ to conclude that [plaintiff's] substance use was material to the finding of disability, and substantial evidence supports the finding").

based on her erroneous assessment of the relevant, work-preclusive opinions of several medical and non-medical experts, in conjunction with plaintiff's purported improvement during periods of sobriety.  Accordingly, remand is warranted in order for the ALJ to reassess the medical opinions of record, including those opinions that clearly address the effect of plaintiff's substance abuse on her mental limitations and/or were rendered during periods of undisputed sobriety.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **GRANTED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED**; and it is further

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

Dated: April 19, 2024

Mitchell J. Katz
U.S. Magistrate Judge